UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

        Plaintiff,

v.                             Case No. 18-CR-176

CHADWICK GRUBBS,

        Defendant.

## PLEA AGREEMENT

1. The United States of America, by its attorneys, Matthew D. Krueger, United States Attorney for the Eastern District of Wisconsin, and Gregory J. Haanstad, Assistant United States Attorney, and Kathryn E. Gilbert, Trial Attorney, Civil Rights Division, and the defendant, Chadwick Grubbs, individually and by attorney Anderson M. Gansner, pursuant to Rule 11 of the Federal Rules of Criminal Procedure, enter into the following plea agreement:

### CHARGES

2. The defendant has been charged in each count of a seven-count indictment, which alleges violations of Title 18, United States Code, Sections 247(a)(2), 247(d)(3), 844(e), and 876(c).

3. The defendant has read and fully understands the charges contained in the indictment. He fully understands the nature and elements of the crimes with which he has been charged. Those charges and the terms and conditions of the plea agreement have been fully explained to him by his attorney.

4. The defendant voluntarily agrees to plead guilty to the following counts set forth in full as follows:

## COUNT FOUR

**THE GRAND JURY FURTHER CHARGES:**

*On or about May 16, 2018, in the State and Eastern District of Wisconsin and elsewhere,*

**CHADWICK GRUBBS**

*knowingly, through the use of the mail, willfully made a threat concerning an attempt and alleged attempt being made, and to be made, to kill, injure, and intimidate individuals at the Harry and Rose Samson Family Jewish Community Center (JCC) and unlawfully to damage and destroy a building and real and personal property, to wit: the Harry and Rose Samson Family Jewish Community Center (JCC) and its contents, by means of fire and an explosive.*

*In violation of Title 18, United States Code, Section 844(e).*

## COUNT FIVE

**THE GRAND JURY FURTHER CHARGES:**

*On or about May 7, 2018, in the State and Eastern District of Wisconsin and elsewhere,*

**CHADWICK GRUBBS**

*knowingly deposited in an authorized depository for mail matter, to be sent and delivered by the Postal Service, a communication with or without a name or designating mark subscribed thereto, addressed to another person, to wit: persons at the Harry and Rose Samson Family Jewish Community Center (JCC), and containing a threat to injure the person of the addressee and of another, to wit: persons at the JCC.*

*In violation of Title 18, United States Code, Section 876(c).*

2

## *COUNT SIX*

### *THE GRAND JURY FURTHER CHARGES:*

*On or about May 15, 2018, in the State and Eastern District of Wisconsin and elsewhere,*

### *CHADWICK GRUBBS*

*knowingly deposited in an authorized depository for mail matter, to be sent and delivered by the Postal Service, a communication with or without a name or designating mark subscribed thereto, addressed to another person, to wit: persons at the Harry and Rose Samson Family Jewish Community Center (JCC), and containing a threat to injure the person of the addressee and another, to wit: persons at the JCC.*

*In violation of Title 18, United States Code, Section 876(c).*

5. The defendant acknowledges, understands, and agrees that he is, in fact, guilty of the offenses described in paragraph 4. The parties acknowledge and understand that if this case were to proceed to trial, the government would be able to prove the facts in Attachment A beyond a reasonable doubt. The defendant admits that these facts are true and correct and that they establish his guilt beyond a reasonable doubt.

This information is provided for the purpose of setting forth a factual basis for the plea of guilty. It is not a full recitation of the defendant's knowledge of, or participation in, these offenses.

3

## PENALTIES

6. The parties understand and agree that the offenses to which the defendant will enter a plea of guilty carry the following maximum penalties:

|  | Maximum imprisonment | Maximum fine | Maximum supervised release |
|---|---|---|---|
| **Count Four:** | Ten years | $250,000 | Three years |
| **Count Five:** | Five years | $250,000 | Three years |
| **Count Six:** | Five years | $250,000 | Three years |
| **Count Seven:** | Five years | $250,000 | Three years |

Each count also carries a mandatory special assessment of $100.

7. The defendant acknowledges, understands, and agrees that he has discussed the relevant statutes as well as the applicable sentencing guidelines with his attorney.

## DISMISSAL OF REMAINING COUNTS

8. The government agrees to move to dismiss the remaining counts of the indictment at the time of sentencing.

## ELEMENTS

9. The parties understand and agree that in order to sustain the charge of making a threat to injure or destroy property by means of fire or explosives, as set forth in Count Four, the government must prove each of the following propositions beyond a reasonable doubt:

First, the defendant made a threat to unlawfully damage or destroy a building by means of fire or an explosive;

Second, the defendant used an instrument of interstate commerce, such as the mail, to communicate the threat; and

Third, the defendant acted knowingly and willfully.

4

10. The parties understand and agree that in order to sustain the charge of mailing threatening communications, as charged in Counts Five, Six, and Seven, the government must prove each of the following propositions beyond a reasonable doubt:

<u>First</u>, the defendant wrote a letter addressed to a certain person or location containing a threat to injure the person of the addressee or of another; and

<u>Second</u>, the defendant knowingly deposited the letter in any authorized depository for mail matter, to be sent or delivered by the Postal Service.

11. The parties agree to waive the time limits in Fed. R. Crim. P. 32 relating to the presentence report, including that the presentence report be disclosed not less than 35 days before the sentencing hearing, in favor of a schedule for disclosure, and the filing of any objections, to be established by the court at the change of plea hearing.

12. The parties acknowledge, understand, and agree that any sentence imposed by the court will be pursuant to the Sentencing Reform Act, and that the court will give due regard to the Sentencing Guidelines when sentencing the defendant.

13. The defendant acknowledges and agrees that his attorney has discussed the potentially applicable sentencing guidelines provisions with him to the defendant's satisfaction.

14. The parties acknowledge and understand that prior to sentencing the United States Probation Office will conduct its own investigation of the defendant's criminal history. The parties further acknowledge and understand that, at the time the defendant enters a guilty plea, the parties may not have full and complete information regarding the defendant's criminal history. The parties acknowledge, understand, and agree that the defendant may not move to withdraw the guilty plea solely as a result of the sentencing court's determination of the defendant's criminal history.

## Sentencing Guidelines Calculations

15. The defendant acknowledges and understands that the sentencing guidelines recommendations contained in this agreement do not create any right to be sentenced within any particular sentence range, and that the court may impose a reasonable sentence above or below the guideline range. The parties further understand and agree that if the defendant has provided false, incomplete, or inaccurate information that affects the calculations, the government is not bound to make the recommendations contained in this agreement.

## Relevant Conduct

16. The parties acknowledge, understand, and agree that pursuant to Sentencing Guidelines Manual § 1B1.3, the sentencing judge may consider relevant conduct in calculating the sentencing guidelines range, even if the relevant conduct is not the subject of the offenses to which the defendant is pleading guilty.

## Base Offense Level

17. The parties agree to recommend to the sentencing court that the applicable base offense level for the offenses to which the defendant is pleading guilty is 12 under Sentencing Guidelines Manual § 2A6.1(a)(1).

## Specific Offense Characteristics

18. The parties agree to recommend to the sentencing court that, because the offenses involved more than two threats, a two-level increase is applicable under Sentencing Guidelines Manual § 2A6.1(b)(2)(A).

6

### Hate Crime Motivation

19.     The parties agree to recommend to the sentencing court that, because the defendant intentionally selected any victim or any property as the object of the offense because of the race, religion, or ethnicity of any person, a three-level increase under Sentencing Guidelines Manual § 3A1.1(a) is applicable.

### Acceptance of Responsibility

20.     The government agrees to recommend a two-level decrease for acceptance of responsibility as authorized by Sentencing Guidelines Manual § 3E1.1(a), but only if the defendant exhibits conduct consistent with the acceptance of responsibility. In addition, if the court determines at the time of sentencing that the defendant is entitled to the two-level reduction under § 3E1.1(a), the government agrees to make a motion recommending an additional one-level decrease as authorized by Sentencing Guidelines Manual § 3E1.1(b) because the defendant timely notified authorities of his intention to enter a plea of guilty.

### Sentencing Recommendations

21.     Both parties reserve the right to provide the district court and the probation office with any and all information which might be pertinent to the sentencing process, including but not limited to any and all conduct related to the offense as well as any and all matters which might constitute aggravating or mitigating sentencing factors.

22.     Both parties reserve the right to make any recommendation regarding any other matters not specifically addressed by this agreement.

23.     The parties acknowledge, understand, and agree that the government will recommend a sentence within the applicable sentencing guideline range, as determined by the court.

## Court's Determinations at Sentencing

24. The parties acknowledge, understand, and agree that neither the sentencing court nor the United States Probation Office is a party to or bound by this agreement. The United States Probation Office will make its own recommendations to the sentencing court. The sentencing court will make its own determinations regarding any and all issues relating to the imposition of sentence and may impose any sentence authorized by law up to the maximum penalties set forth in paragraph 6 above. The parties further understand that the sentencing court will be guided by the sentencing guidelines but will not be bound by the sentencing guidelines and may impose a reasonable sentence above or below the calculated guideline range.

25. The parties acknowledge, understand, and agree that the defendant may not move to withdraw the guilty plea solely as a result of the sentence imposed by the court.

## SPECIAL ASSESSMENT

26. The defendant agrees to pay the special assessment in the amount of $400 prior to or at the time of sentencing.

## DEFENDANT'S WAIVER OF RIGHTS

27. In entering this agreement, the defendant acknowledges and understands that he surrenders any claims he may have raised in any pretrial motion, as well as certain rights which include the following:

    a. If the defendant persisted in a plea of not guilty to the charges against him, he would be entitled to a speedy and public trial by a court or jury. The defendant has a right to a jury trial. However, in order that the trial be conducted by the judge sitting without a jury, the defendant, the government and the judge all must agree that the trial be conducted by the judge without a jury.

    b. If the trial is a jury trial, the jury would be composed of twelve citizens selected at random. The defendant and his attorney would have a say in who the jurors would be by removing prospective jurors for cause where actual bias or other disqualification is shown, or without cause by exercising peremptory challenges. The jury would have to agree unanimously before it

8

could return a verdict of guilty. The court would instruct the jury that the defendant is presumed innocent until such time, if ever, as the government establishes guilt by competent evidence to the satisfaction of the jury beyond a reasonable doubt.

 c. If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all of the evidence, whether or not he was persuaded of defendant's guilt beyond a reasonable doubt.

 d. At such trial, whether by a judge or a jury, the government would be required to present witnesses and other evidence against the defendant. The defendant would be able to confront witnesses upon whose testimony the government is relying to obtain a conviction and he would have the right to cross-examine those witnesses. In turn the defendant could, but is not obligated to, present witnesses and other evidence on his own behalf. The defendant would be entitled to compulsory process to call witnesses.

 e. At such trial, defendant would have a privilege against self-incrimination so that he could decline to testify and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify on his own behalf.

28. The defendant acknowledges and understands that by pleading guilty he is waiving all the rights set forth above. The defendant further acknowledges the fact that his attorney has explained these rights to him and the consequences of his waiver of these rights. The defendant further acknowledges that as a part of the guilty plea hearing, the court may question the defendant under oath, on the record, and in the presence of counsel about the offense to which the defendant intends to plead guilty. The defendant further understands that the defendant's answers may later be used against the defendant in a prosecution for perjury or false statement.

29. The defendant acknowledges and understands that he will be adjudicated guilty of the offenses to which he will plead guilty and thereby may be deprived of certain rights, including but not limited to the right to vote, to hold public office, to serve on a jury, to possess firearms, and to be employed by a federally insured financial institution.

30. The defendant knowingly and voluntarily waives all claims he may have based upon the statute of limitations, the Speedy Trial Act, and the speedy trial provisions of the Sixth Amendment. The defendant agrees that any delay between the filing of this agreement and the entry of the defendant's guilty plea pursuant to this agreement constitutes excludable time under the Speedy Trial Act.

### Further Civil or Administrative Action

31. The defendant acknowledges, understands, and agrees that the defendant has discussed with his attorney and understands that nothing contained in this agreement, including any attachment, is meant to limit the rights and authority of the United States of America or any other state or local government to take further civil, administrative, or regulatory action against the defendant, including but not limited to any listing and debarment proceedings to restrict rights and opportunities of the defendant to contract with or receive assistance, loans, and benefits from United States government agencies.

## GENERAL MATTERS

32. The parties acknowledge, understand, and agree that this agreement does not require the government to take, or not to take, any particular position in any post-conviction motion or appeal.

33. The parties acknowledge, understand, and agree that the United States Attorney's office is free to notify any local, state, or federal agency of the defendant's conviction.

34. The defendant understands that pursuant to the Victim and Witness Protection Act, the Justice for All Act, and regulations promulgated thereto by the Attorney General of the United States, the victim of a crime may make a statement describing the impact of the offense on the victim and further may make a recommendation regarding the sentence to be imposed.

The defendant acknowledges and understands that comments and recommendations by a victim may be different from those of the parties to this agreement.

## EFFECT OF DEFENDANT'S BREACH OF PLEA AGREEMENT

35. The defendant acknowledges and understands if he violates any term of this agreement at any time, engages in any further criminal activity prior to sentencing, or fails to appear for sentencing, this agreement shall become null and void at the discretion of the government. The defendant further acknowledges and understands that the government's agreement to dismiss any charge is conditional upon final resolution of this matter. If this plea agreement is revoked or if the defendant's conviction ultimately is overturned, then the government retains the right to reinstate any and all dismissed charges and to file any and all charges which were not filed because of this agreement. The defendant hereby knowingly and voluntarily waives any defense based on the applicable statute of limitations for any charges filed against the defendant as a result of his breach of this agreement. The defendant understands, however, that the government may elect to proceed with the guilty plea and sentencing. If the defendant and his attorney have signed a proffer letter in connection with this case, then the defendant further acknowledges and understands that he continues to be subject to the terms of the proffer letter.

## VOLUNTARINESS OF DEFENDANT'S PLEA

36. The defendant acknowledges, understands, and agrees that he will plead guilty freely and voluntarily because he is in fact guilty. The defendant further acknowledges and agrees that no threats, promises, representations, or other inducements have been made, nor agreements reached, other than those set forth in this agreement, to induce the defendant to plead guilty.

11

## ACKNOWLEDGMENTS

I am the defendant. I am entering into this plea agreement freely and voluntarily. I am not now on or under the influence of any drug, medication, alcohol, or other intoxicant or depressant, whether or not prescribed by a physician, which would impair my ability to understand the terms and conditions of this agreement. My attorney has reviewed every part of this agreement with me and has advised me of the implications of the sentencing guidelines. I have discussed all aspects of this case with my attorney and I am satisfied that my attorney has provided effective assistance of counsel.

Date: 11/9/18

CHADWICK GRUBBS
Defendant

I am the defendant's attorney. I carefully have reviewed every part of this agreement with the defendant. To my knowledge, my client's decision to enter into this agreement is an informed and voluntary one.

Date: 11/9/18

ANDERSON M. GANSNER
Attorney for Defendant

For the United States of America:

Date: 11-9-2018

MATTHEW D. KRUEGER
United States Attorney

Date: 11/9/2018

GREGORY J. HAANSTAD
Assistant United States Attorney

Date: 11/8/2018

KATHRYN E. GILBERT
Trial Attorney
Criminal Section, Civil Rights Division

12

**Attachment A**

On May 7, 2018, while he was an inmate at Winnebago County Jail in Oshkosh, Wisconsin, Chadwick Grubbs wrote a letter addressed to the Jewish Community Center ("JCC") and knowingly deposited it in the jail's mail system. Grubbs was advised through the inmate handbook at booking that letters placed in the jail's mail system would be delivered by the U.S. Potal Service. The letter, dated May 7, 2018, states:

TO WHOM IT MAY CONCERN:

The only thing worse than Niggers are Jews. A Part of the Zionist Machine, you guys are the real threat! My plan of action is to level the playing field in Milwaukee, WI and even up the score.

Having recently been released from Waupun prison, I have had ample time to methodically plan an attack. I have already had an associate conduct surveillance of the property and building. I am committed and fully intend to murder as many kykes as I possibly can. On the street I have access to an AR-15 as well as a 9mm handgun and body armor. If I must die accomplishing my ultimate goal, then I will be a casualty of war, a seat in Valhalla all but secured for me. Shooting it out doesn't deter me.

DO NOT UNDERESTIMATE ME OR MY REACH. I already have one hate crime conviction under my belt, for attacking an African,[1] as well as many unreported/uncharged incidents. I am a violent White Supremacist from the West Coast, with confirmed ties to an organization. I am determined to carry this out.

I am currently serving a county jail sentence for battery, for an assault against a jewish [sic] inmate at Oshkosh Correctional Institute.[2] I get out May 30th, and am going to put my plan into action soon. Your center is currently being watched, the comings and goings noted so I can ensure maximum carnage on the day of reckoning. Many of your members will be taking a ride to the afterlife. I do have some morals, so keep women and children away to minimize collateral damage. This will be a bloody massacre of epic proportions. It will put the shooting of the sikh [sic] temple on Oak Creek to shame, that much I can promise you. See you soon!!!

Sincerely, Chad Grubbs
144488 SWP

On May 15, 2018, while he was an inmate at Winnebago County Jail, Grubbs wrote a letter addressed to the JCC and placed it in the jail's mail system. The letter states:

---

[1] This assertion is accurate.
[2] This assertion is accurate, in that Grubbs perceived the inmate to be Jewish.

TO WHOM IT MAY CONCERN:

The final countdown is looking on the horizon. Maximum carnage will be inflicted upon your people. I hope you have made the appropriate arrangements to make women and children scarce. Or they will be cut down with the rest. No one will be spared. Soon I will make a trip to pick up firearms, and the hunting will begin. This is not a game, nor are these idle threats. This is deadly serious business. I do not make promises I cannot keep. It is your center's destiny, and mine as well. I am a modern day Viking, and once a decision to act is made it cannot be recanted even if death occurs in the process.

Sincerely,
Chad E. Grubbs

On May 16, 2018, while he was an inmate at Winnebago County Jail, Grubbs wrote a letter addressed to the JCC and knowingly deposited it in the jail's mail system. The letter is dated May 16, 2018, and states:

TO WHOM IT MAY CONCERN:

I am having your known members of the center researched. My associates are creating explosive devices aka "dirty bombs" to use on the center when it's at it's [*sic*] most vulnerable. Soon, very soon, a day of terror will arrive in Whitefish Bay. If I am arrested or killed completing my mission there are others who will take my place. This is a full fledged War, RAHOWA, and lives must be lost.

In short order you will find out just how serious I am. I do not make promises I do not keep. I will be making a well planned and well executed assault of your premises. I will be there very soon.

Sincerely, Chad Grubbs
14⚡⚡88

Grubbs intended for these letters to be delivered by the United States Postal Service to the JCC. Grubbs used certain numbers, terms, and symbols in his letters because of their significance to white supremacists. "14⚡⚡88" signifies the following: (1) the "14 words" that comprise a central white supremacist creed, "we must secure the existence of our people and the future for white children"; (2) the lightning bolts symbol used by the Nazi paramilitary organization the SS; and (3) "Heil Hitler," symbolized by the number 88, because the letter H is the eighth letter of the alphabet. "RAHOWA" is a white supremacist term that stands for "racial holy war," and "SWP" stands for "Supreme White Power."