UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                              Case No. 18-CR-176

CHADWICK GRUBBS,

        Defendant.

## GOVERNMENT'S SENTENCING MEMORANDUM

Background

Defendant Chadwick Grubbs has a long history of violence, threatened violence, and hate-motivated criminal behavior. In May 2018, while he was serving a sentence in the Winnebago County Jail, the defendant wrote and mailed letters to the Jewish Community Center (JCC) in Whitefish Bay, Wisconsin. In those letters, the defendant described his plans to perpetrate a "bloody massacre" at the JCC with an assault rifle and other weapons; threatened to use "dirty bombs" to attack the JCC; and claimed that he had associates on the outside who would help him follow through on these "deadly serious" threats. A federal grand jury sitting in the Eastern District of Wisconsin returned an indictment against the defendant, who now has entered guilty pleas to one count of threatening arson by mail, in violation of Title 18, United States Code, Section 844(e), and two counts of mailing threatening communications, in violation of Title 18, United States Code, Section 876(c). Sentencing has been scheduled for February 12, 2019, and the United States Probation Office has prepared a presentence report (PSR) in which it calculates the guidelines imprisonment range as 37 to 46 months. For the reasons that follow, the government recommends that the court impose a sentence of 46 months of imprisonment and

that the court order that sentence to run consecutively to any other sentence the defendant is currently serving.

## Sentencing Scheme

In imposing a sentence, the court first must calculate the advisory guidelines range, and then consider that range along with the other factors set forth in 18 U.S.C. § 3553(a), including the nature and circumstances of the offense, the history and characteristics of the defendant, and the need for the sentence to further the aims of sentencing. *See* 18 U.S.C. § 3553(a). In a case such as this, where a defendant is subject to an undischarged term of imprisonment, the sentencing court also must decide whether the sentence it imposes will run consecutively, concurrently, or partly concurrently to the undischarged term. *See* 18 U.S.C. §3584(a); *Setser v. United States*, 132 S. Ct. 1463, 1468 (2012).

   A.   Sentencing Guidelines calculations

Neither party has objected to the sentencing guidelines calculations in the PSR – the parties agreed to those calculations in their plea agreement. Those calculations result in a total offense level of 14, a criminal history category of VI, and a guideline imprisonment range of 37 to 46 months. *See* PSR at ¶ 139.

   B.   Nature and circumstances of the offense

The defendant's offenses were about threats of murder and extreme violence motivated by hate. He described himself as a "violent White Supremacist," and threatened to carry out a "bloody massacre of epic proportions" against the JCC and its members. The defendant claimed that he wanted to "ensure maximum carnage" at the JCC, and that his aim was to "murder as many kykes as I possibly can." He threatened to use a "dirty bomb," as well as firearms – including a 9 millimeter handgun and an AR-15 – to carry out his attack.

2

More specifically, the defendant wrote and mailed the following letters to the JCC in May of 2017:

> TO WHOM IT MAY CONCERN:
>
> The only thing worse than Niggers are Jews. A Part of the Zionist Machine, you guys are the real threat! My plan of action is to level the playing field in Milwaukee, WI and even up the score.
>
> Having recently been released from Waupun prison, I have had ample time to methodically plan an attack. I have already had an associate conduct surveillance of the property and building. I am committed and fully intend to murder as many kykes as I possibly can. On the street I have access to an AR-15 as well as a 9mm handgun and body armor. If I must die accomplishing my ultimate goal, then I will be a casualty of war, a seat in Valhalla all but secured for me. Shooting it out doesn't deter me.
>
> DO NOT UNDERESTIMATE ME OR MY REACH. I already have one hate crime conviction under my belt, for attacking an African,[1] as well as many unreported/uncharged incidents. I am a violent White Supremacist from the West Coast, with confirmed ties to an organization. I am determined to carry this out.
>
> I am currently serving a county jail sentence for battery, for an assault against a jewish [sic] inmate at Oshkosh Correctional Institute.[2] I get out May 30th, and am going to put my plan into action soon. Your center is currently being watched, the comings and goings noted so I can ensure maximum carnage on the day of reckoning. Many of your members will be taking a ride to the afterlife. I do have some morals, so keep women and children away to minimize collateral damage. This will be a bloody massacre of epic proportions. It will put the shooting of the sikh [sic] temple on Oak Creek to shame, that much I can promise you. See you soon!!!
>
> Sincerely, Chad Grubbs
> 14~~4~~88 SWP
>
> * * *
>
> TO WHOM IT MAY CONCERN:
>
> The final countdown is looking on the horizon. Maximum carnage will be inflicted upon your people. I hope you have made the appropriate arrangements to make women and children scarce. Or they will be cut down with the rest. No one will be spared. Soon I will make a trip to pick up firearms, and the hunting

---

[1] This assertion is accurate.
[2] This assertion is accurate, in that Grubbs perceived the inmate to be Jewish.

3

*will begin. This is not a game, nor are these idle threats. This is deadly serious business. I do not make promises I cannot keep. It is your center's destiny, and mine as well. I am a modern day Viking, and once a decision to act is made it cannot be recanted even if death occurs in the process.*

*Sincerely,*
*Chad E. Grubbs*

*\* \* \**

*TO WHOM IT MAY CONCERN:*

*I am having your known members of the center researched. My associates are creating explosive devices aka "dirty bombs" to use on the center when it's at it's [sic] most vulnerable. Soon, very soon, a day of terror will arrive in Whitefish Bay. If I am arrested or killed completing my mission there are others who will take my place. This is a full fledged War, RAHOWA, and lives must be lost.*

*In short order you will find out just how serious I am. I do not make promises I do not keep. I will be making a well planned and well executed assault of your premises. I will be there very soon.*

*Sincerely, Chad Grubbs*
*14⚡⚡88*

The defendant used certain numbers, terms, and symbols in his letters because of their significance to white supremacists. "14⚡⚡88" signifies the following: (1) the "14 words" that comprise a central white supremacist creed, "we must secure the existence of our people and the future for white children"; (2) the lightning bolts symbol used by the Nazi paramilitary organization the SS; and (3) "Heil Hitler," symbolized by the number 88, because the letter H is the eighth letter of the alphabet. "RAHOWA" is a white supremacist term that stands for "racial holy war," and "SWP" stands for "Supreme White Power." See PSR at ¶¶ 9-13.

C. History and characteristics of the defendant

The defendant has nineteen prior adult convictions. His criminal history is extensive and serious enough to garner seventeen criminal history points and place him well into the highest criminal history category provided under the guidelines (only thirteen points are required to fall

4

within criminal history category VI). His seventeen criminal history points are the product of only six of his prior convictions – thirteen of his prior adult convictions are not countable under the guidelines. *See* PSR at ¶¶ 45-66.

The defendant's nineteen adult convictions occurred over the span of thirteen years. During that time, he frequently engaged in additional criminal conduct while under some type of criminal sentence. The defendant has had various types of supervision revoked on at least fifteen occasions, and he committed the instant offense while serving a jail term in one case and while on extended supervision in another. *See* PSR at ¶ 65.

The defendant's criminal history is aggravated not only by the number of convictions he has sustained,[3] but also by the nature and circumstances of his prior criminal conduct. Like the present offense, a significant number of the defendant's prior convictions are for offenses that involved violence or threats of violence and were motivated by hate.

- Dane County Circuit Court – 13CF001662

    In 2013, the defendant was convicted of battery and disorderly conduct as hate crimes. The defendant and another man assaulted a victim after noting "he's African." As they were being taken into custody, the defendant yelled to his associate, "You earned your lightning bolt. . . . We did white boy work tonight."

    When the defendant was interviewed after his arrest, he told the interviewing detective that he had been involved with Public Enemy Number 1, a white supremacist group. The defendant also told the interviewer that he had the California Penal Code section for hate crimes tattooed on his arm.

---

[3] In addition to nineteen adult criminal convictions, the defendant also has three juvenile adjudications and a number of additional arrests or other encounters with law enforcement. *See* PSR at ¶¶ 42-44, 67-80.

5

The defendant eventually violated the terms of his supervision. When being interviewed about the violation, the defendant told the interviewer that he was a member of the Aryan Brotherhood and knew where the interviewer lived. The defendant then told the interviewer about a prosecutor the Aryan Brotherhood had killed. *See* PSR at ¶ 59.

- Racine County Circuit Court – 16CF000298

In 2016, the defendant was convicted of stalking and battery after he sent a series of harassing and threatening text messages to the victim. Among the text messages sent over the course of about 25 minutes were:

- "I'm straight but there's something about grabbing another man and fucking them that I like. Taking manhood. I learned to love it back in the California youth authority.

- "I raped this guy up in eau Clair, blood and everything."

- "Your sons look cute."

- "I know where you work I might follow you home."

- "I'm a brotherhood member."

- "You disrespected the wrong guy."

- "I might follow you home."

- "There's something about man-ass. Just holding somebody down and fucking them as hard as you can."

*See* PSR at ¶ 61.

- Winnebago County Circuit Court – 17CM000922

In 2017, the defendant was convicted of battery after he assaulted a fellow inmate at the Oshkosh Correctional Institution. The defendant had been taunting the victim by saying things like, "I want to rape your daughter." And "I want her Jewish blood on my

6

dick." The victim said that the defendant had also gone through his belongings and found an address for the victim's daughter. The defendant ultimately attacked the victim, punching him in the head until jail staff subdued the defendant with pepper spray. *See* PSR at ¶ 62.

- Winnebago County Circuit Court – 18CF000392

In 2018, while in custody serving a sentence for his conviction in Case No. 17CM000992, Grubbs wrote and mailed a threatening letter to the judge who had sentenced him in that case. The letter reads:

*[T]his is Chad Grubbs a criminal defendant you recently sentenced to jail time on a battery charge. I must ask is it common practice to protect and defend vicious, heinous child molesters. A simple prison fight that resulted in county jail time for which I should have received an award for, is outrageous. I find you and only you responsible for this egregious miscarriage of justice. You should have to pay for this offense against my liberties. Thanks to you the poor security at the Winnebago County court house achieving this goal should not be an impossible task to accomplish. With the assistance of associates I have already conducted surveillance of the property. Your voice which delivers justice must be silenced. Once and for all. A quick couple of rounds from a suppressed weapon or spraying from an automatic should do the job. I have already researched you. I am a violent while supremacist from the west coast and have ties to an organization. If I have to die trying then so be it. May those little girls families of the child molester you protected sleep better at night. I am thoroughly determined to seek retribution at any and all costs. If you think my probation officer will assist you with a hold your wrong. She will promptly lift one. She's dirty. A supporter of our cause, secretly and on the take. I am out of jail in less than two weeks and have one mission, one goal, one agenda. You made a mistake of epic proportions. You have made a lifelong enemy of us and in short order my verdict will be handed down to you.*

*Sincerely,*

*Chad E. Grubbs*

*Winnebago County Jail*

*See* PSR at ¶ 63.

7

D.  Sentencing objectives

A significant term of imprisonment is necessary to protect the public from further crimes of the defendant and to deter future criminal conduct. The defendant has demonstrated, both in committing the present offenses and by the conduct underlying his earlier convictions, that he presents a danger to the community. He has repeatedly engaged in hate-motivated violence or threats of violence and has demonstrated a staggering lack of regard for the lives, welfare, and physical safety of other human beings.

It is further troubling that the graphic, hate-motivated threats in this case were made by a defendant who has a history of not only making such threats, but also of actually engaging in hate-motivated violence. This factor, too, strongly suggests the need for a significant period of imprisonment to protect the public.

The defendant is being sentenced for his twentieth adult criminal conviction. There has been shockingly little interruption or decrease in severity in the defendant's criminal conduct following prior convictions and sentences. In fact, by some measures, it would appear that the levels of violence or threatened violence, as well as the frequency of that type of conduct, increased over time. To this point, neither supervision nor custody have significantly deterred the defendant. He consistently engaged in criminal conduct, including while serving criminal sentences – he committed the present offenses while serving sentences in two other criminal cases. This history of criminal conduct, including that underlying the defendant's conviction on the present offenses, strongly suggests that a significant term of imprisonment is needed not only to protect the public and to deter criminal conduct, but also to promote respect for the law.

E.  Consecutive versus concurrent time

The defendant's sentence in this case should run consecutively to any undischarged state sentences, because the federal case involves entirely different victims and distinct harms.

Because the defendant is subject to an undischarged term of imprisonment, the effective length of his sentence is a function of both the term of imprisonment the court imposes and the court's consecutive/concurrent determination. For the same reasons that the § 3553(a) factors call for a significant term of imprisonment, they also warrant the imposition of a consecutive sentence to achieve that significant term.

The defendant is subject to undischarged terms of imprisonment in Racine County Case No. 16CF000298, Winnebago County Case No. 17CM000922, and Racine County Case No. 18CF000392. The defendant was serving a term of state imprisonment at the time he committed the instant offense, and since he committed the instant offense, he has been sentenced to an additional term of state imprisonment. Federal sentencing courts "generally 'have discretion to select whether the sentences they impose will run concurrently or consecutively with respect to other sentences . . . that have been imposed in other proceedings, including state proceedings.'" U.S.S.G. 5G1.3, comment. (backg'd.) (quoting *Setser*, 132 S. Ct. at 1468; 18 U.S.C. § 3584(a).

With respect to the term of imprisonment that the defendant was already serving at the time he committed the instant offense, there is both a statutory and a Guidelines presumption in favor of imposing a consecutive sentence in this case. *See* 18 U.S.C. § 3584(a) ("Multiple terms of imprisonment imposed at different times run consecutively unless the court orders that the terms are to run concurrently."); U.S.S.G. § 5G1.3(a) ("If the instant offense was committed while the defendant was serving a term of imprisonment . . . , the sentence for the instant offense shall be imposed to run consecutively to the undischarged term of imprisonment.").[4] "The

---

[4] Despite the mandatory language of U.S.S.G. § 5G1.3(a), *United States v. Booker*, 543 U.S. 220 (2005), "made all Guidelines advisory; the judge must understand what sentence the Guidelines recommend but need not impose it." *United States v. Bangsengthong*, 550 F.3d 681, 682 (7th Cir. 2008). "Although § 5G1.3 expresses the Sentencing Commission's views about how a court's § 3584 sentencing discretion should be exercised, it does not restrict that discretion after [*Booker*]." *United States v. Campbell*, 617 F.3d 958, 960 (7th Cir. 2010).

9

criminal code indicates that ordering a defendant to serve consecutive rather than concurrent sentences which were imposed at different times is the default, and the relevant provision of the Guidelines specifically advises consecutive sentences in this situation." *United States v. Rucker*, 766 F.3d 638, 646 (7th Cir. 2014) (citing 18 U.S.C. § 3584(a) and U.S.S.G. § 5G1.3(a)). By committing the instant offense while serving a term of imprisonment, the defendant has triggered the presumption in favor of a consecutive sentence.

Despite that presumption, and despite the mandatory language of U.S.S.G. § 5G1.3(a), courts retain broad discretion to impose sentences to run consecutively or concurrently to any state sentence the defendant was serving at the time he committed the instant offense. *Setser*, 132 S. Ct. at 1468. Additionally, and pursuant to U.S.S.G. § 5G1.3(d), courts retain broad discretion to impose consecutive sentences in any other case involving an undischarged term of imprisonment.

In exercising that discretion, courts must consider the factors set forth in 18 U.S.C. § 3553(a). *See* 18 U.S.C. § 3584(b). As is set forth in detail above, those factors suggest strongly that a significant term of imprisonment is appropriate in this case.

The underlying purpose of the various provisions of § 5G1.3 "is to prevent a defendant from serving duplicative sentences for the same criminal act." *United States v. Blackwell*, 49 F.3d 1232, 1241 (7th Cir. 1995). The offenses for which the defendant is being sentenced here are completely separate from the crimes for which he is serving state sentences. There was no material factual overlap between the instant conduct and the state offenses. They involved different motivations, different harms, and separate and distinct threats made to entirely unrelated victims. *Cf. United States v. Orozco-Sanchez*, 814 F.3d 844 (7th Cir. 2016) (offenses involving different victims and different underlying conduct are too dissimilar to constitute relevant conduct). Under those circumstances, there is no concern about the defendant serving

duplicative sentences for the same criminal act. Indeed, a consecutive sentence is needed to adequately reflect the seriousness of the separate criminal conduct and to provide just punishment for that conduct.

## Conclusion

For the reasons set forth above, the government respectfully recommends that the Court impose a sentence of 46 months of imprisonment and order that sentence to run consecutively to any undischarged term of imprisonment the defendant currently is serving.

Dated at Milwaukee, Wisconsin, this 5th day of February, 2019.

                                        Respectfully submitted,

                                        MATTHEW D. KRUEGER
                                        United States Attorney

By:    s/ Gregory J. Haanstad

        GREGORY J. HAANSTAD
        Assistant United States Attorney
        Attorney for the United States
        Wisconsin Bar: 1036125
        United States Attorney's Office
        Eastern District of Wisconsin
        517 E. Wisconsin Avenue, Room 530
        Milwaukee, Wisconsin 53202
        greg.haanstad@usdoj.gov

        s/ Kathryn E. Gilbert

        KATHRYN E. GILBERT
        Trial Attorney
        Attorney for the United States
        Bar No.: NY 5260344
        United States Department of Justice
        Civil Rights Division
        601 D St., NW
        Washington, DC 20004
        kathryn.gilbert@usdoj.gov